UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

REBECCA PATRICK,

                        Plaintiff,

       -against-                            9:20-CV-0047 (LEK/DJS)

CRAIG APPLE, *et al.,*

                        Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On January 13, 2020, Rebecca Patrick filed this civil rights action against Correction Officer Michael Snyder, Albany County Sheriff Craig Apple, the Albany County Sheriff's Office, and the County of Albany (collectively, "Defendants"), asserting claims under the Eighth Amendment, the Fourteenth Amendment, the Prison Rape Elimination Act of 2003, 34 U.S.C. § 303, and New York State Corrections Law § 500-b, as well as various tort claims. See Dkt. No. 1 ("Complaint") ¶¶ 7–11, 26–94. In addition to asserting claims against Snyder based on allegations that he subjected Plaintiff to unwanted sexual contact while she was incarcerated in Albany County Correctional Facility ("ACCF"), Plaintiff asserts claims in the Complaint against the other defendants based on their alleged failure to adequately supervise Snyder, as well as claims seeking to impose vicarious liability upon those other defendants. See id. ¶¶ 26–94.

Before the Court is Snyder's motion to stay proceedings in this case pending the outcome of state criminal proceedings against Snyder. See Dkt. No. 17 ("Motion"). Accompanying Snyder's Motion are a Memorandum of Law, Dkt. No. 17-1 ("Snyder's Memorandum of Law"), and a declaration of defense counsel Paul DerOhannesian, Dkt. No. 17-2 ("DerOhannesian

Declaration"). Plaintiff filed a response in opposition to the Motion, which contains both a memorandum of law, Dkt. No. 23-4 ("Plaintiff's Memorandum of Law"), and a declaration of Plaintiff's counsel Lee Greenstein, Dkt. No. 23 ("Greenstein Declaration"). Snyder filed a reply. Dkt. No. 24 ("Reply").[1]

For the reasons that follow, Snyder's Motion is denied.

## II.     BACKGROUND

### A.  The Present Civil Suit and the Parallel Criminal Proceedings

Snyder, a correction officer employed by ACCF, see DerOhannesian Decl. ¶¶ 7–8, was previously indicted on criminal charges in connection with alleged criminal conduct of which Plaintiff and Jessica Sumpter were alleged victims. See Dkt. No. 17-3 ("Indictment"). Plaintiff and Sumpter were both incarcerated at ACCF at times relevant to the criminal charges against Snyder as well as the claims in this case. See generally Indictment. On April 17, 2019, Snyder was indicted in Albany County Court on thirteen counts: three counts of rape in the third degree, two counts of criminal sexual act in the third degree and eight counts of sexual abuse in the second degree. See Indictment; DerOhannesian Decl. ¶¶ 7–8. The Indictment is based on allegations that Snyder subjected both Plaintiff and Sumpter to unwanted sexual contact on multiple occasions. DerOhannesian Decl. ¶ 9.

The parties appear to agree that the conduct giving rise to this suit substantially coincides with the conduct giving rise to the indictment against Snyder. See Snyder's Mem. of Law at 7; Greenstein Decl. ¶ 7. In the criminal case, Plaintiff was the complainant for counts six through

---

[1]  Snyder filed a nearly identical motion, with nearly identical supporting papers, in a related civil case brought by Jessica Sumpter. See Sumpter v. Albany County, No. 20-CV-619 ("Sumpter Matter"),  Dkt. No. 9.

thirteen, the sexual abuse in the second degree counts ("Patrick Counts"), DerOhannesian Decl. ¶ 7, while Sumpter was the complaining witness for the remaining five counts ("Sumpter Counts"), id. ¶ 10, and the plaintiff in the related Sumpter Matter, id ¶ 1.

The Indictment was dismissed on legal insufficiency and speedy trial grounds. DerOhannesian Decl. ¶ 17, 22. On December 20, 2019, Snyder moved to dismiss the Patrick Counts, arguing that the Indictment was legally insufficient in that it was not sufficiently particularized as to time and date. DerOhannesian Decl. ¶ 17. On December 30, 2019, the Albany County Court issued a Decision and Order granting Snyder's motion to dismiss the Patrick Counts. Dkt. No. 23-1 ("December 2019 Decision"). The court found that the Indictment, which stated only that Snyder "grop[ed] the same adult female's buttocks on eight occasions, between 7:00 AM and 3:00 PM," on some eight of fourteen listed dates, did not provide sufficient specificity to permit Snyder to adequately prepare a defense and to safeguard against double jeopardy in a future prosecution, and that the People had not "engaged in adequate investigatory efforts" that might have permitted them to determine more specific dates and times. Dec. 2019 Decision at 3–5. On January 6, 2020, Snyder filed a motion to dismiss the Sumpter Counts on speedy trial grounds. DerOhannesian Decl. ¶18. On May 14, 2020, the criminal court granted Snyder's motion to dismiss the Sumpter Counts. Dkt. No. 23-2 ("May 2020 Decision"). In that decision, the Albany County Supreme Court recounted the People's lack of diligence in prosecuting the case. See generally id. The court detailed the People's continual dilatory conduct and failure to proffer any legal theories in opposing Snyder's motion to dismiss to demonstrate that any of the roughly seven months of delay in proceeding to trial was excludable under N.Y.

C.P.L. § 30.30.[2] Id.

Subsequent to the dismissal of the criminal charges against Snyder, Plaintiff and Sumpter separately filed civil suits against Snyder and other parties. On January 13, 2020, Patrick filed the Complaint. Docket. And on June 3, 2020, Sumpter commenced a related civil action in the Northern District of New York against Snyder and various Albany County and Greene County officials and entities. See Sumpter Matter, Dkt. No. 1.

On June 10, 2020, the People filed notices of appeal with respect to both the December 2019 Decision and the May 2020 Decision. DerOhannesian Decl. ¶ 28. The People, however, have not appealed. Greenstein Decl. ¶ 14.[3]

**B. Snyder's Request for a Stay and Plaintiff's Response**

Snyder seeks a stay of proceedings in this case. DerOhannesian Decl. ¶30; Snyder's Mem. of Law at 3–5. More Specifically, Snyder "requests a stay of these civil proceedings until 45 days after an acquittal, conviction or conclusion of an appeal or appeals by the People in the related criminal matter." Snyder's Mem. of Law at 5. As a term of this stay, however, Snyder requests an exception permitting the Greene County defendants in the Sumpter matter to file a motion to dismiss and have that motion decided. DerOhannesian Decl. ¶ 36. Counsel for all defendants in both related civil actions consent to Snyder's Motion. Id. ¶ 35–36.

---

[2] N.Y. C.P.L. § 30.30 requires that the People be ready for trial within six months of the commencement of a criminal action wherein a defendant is accused of a felony, N.Y. C.P.L. § 30.30(1)(a), and provides a variety of bases for excluding periods of time from the six-month count, § 30.30(4).

[3] Pursuant to the Practice Rules of the Appellate Division, the People have six months from the filing of their notice of appeal to submit a brief and record, § 1250.9(a), with the possibility of a sixty-day extension to do so, § 1250.9(b).

Snyder argues, primarily, that a stay is necessary to prevent prejudice inherent in being compelled in this proceeding to choose between, on the one hand, incriminating himself, and on the other hand, either permitting adverse inferences to be drawn from his silence when he invokes his Fifth Amendment privilege, or neglecting to vigorously defend the action. See Snyder's Mem. of Law at 5–7. Plaintiff mainly counters that, due to uncertainties regarding the future of the criminal case, any prejudice to defendant is remote and conjectural and thus outweighed by more imminent and likely prejudice to Plaintiff through delay in pursuing her claims. See Pl.'s Mem. of Law at 5–10. The Court provides a more complete exposition of the parties' arguments below.

## III.   LEGAL STANDARDS

The party moving for a stay "bears the burden of establishing its need." Louis Vuitton Malletier S.A v. LY USA Inc., 676 F.3d 83, 97 (2d Cir. 2012) (quoting Clinton v. Jones, 520 U.S. 681, 708 (1997)). "[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why [a] plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." Transatlantic Reinsurance Co. v. Salatore Ditrapani, Int'l, No. 90-CV-3884, 1991 WL 12135, at *2 (S.D.N.Y. Jan. 28, 1991) (quoting Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc., 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980)).

The Court has the power and discretion to stay a civil action pending the outcome of related criminal proceedings. See Arden Way  Assoc. v. Boesky, 660 F.Supp. 1494, 1496 (S.D.N.Y.1987) (noting that a court has the authority to "defer[] civil proceedings pending the completion of parallel  criminal prosecutions when the interests of justice seem[]to require such action."). But such relief is not constitutionally mandated. See Nosik v. Singe, 40 F.3d 592, 596

(2d Cir. 1994) (noting that "nothing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter."); United States v. Kordel, 397 U.S. 1, 11 (1970) (noting that it is neither a "violation of due process [n]or a departure from proper standards in the administration of justice" to permit the government to conduct civil and criminal proceedings concerning the same subject matter simultaneously, and that the government should not invariably be required to "defer civil proceedings pending the ultimate outcome of a criminal trial"); SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc) ("The Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."), cert. denied, 449 U.S. 993 (1980).

Courts in this Circuit often utilize a six-factor balancing test in determining the propriety of a stay of a civil proceeding pending the outcome of a parallel criminal action, examining:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Louis Vuitton, 676 F.3d at 99 (citing Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

"Whether the defendant has been indicted has been described as 'the most important factor' to be considered in the balance of factors." Maldanado v. City of New York, No. 17-CV-6618, 2018 WL 2561026, at *2 (S.D.N.Y. June 4, 2018) (quoting Karimona Investments, LLC v. Weinreb, No. 02-CV-1792, 2003 WL 941404, at *3 (S.D.N.Y. Mar. 7, 2003)). Courts in this Circuit "have often granted post-indictment stays" of civil proceedings pending the

resolution of parallel criminal proceedings. <u>Savalle v. Kobyluck, Inc.</u>, No. 00-CV-675, 2001 WL 1571381, at *2 (D. Conn. Aug. 15, 2001). Indeed, a post-indictment procedural posture appears in practice to be almost a prerequisite to granting a stay of related civil proceedings. <u>See</u> <u>Citibank, N.A. v. Hakim</u>, No. 92-CV-6233, 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993) (noting that "[i]n this Circuit, however, district courts generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted," and collecting cases). Pre-indictment stays are relatively unusual. <u>See, e.g.</u>, <u>Maldanado</u>, 2018 WL 2561026, at *2 (noting that "where the defendant has not yet been indicted, the factor 'tips strongly in Plaintiff's favor'") (quoting <u>Karimona Investments</u>, 2003 WL 941404, at *3); <u>In re Par Pharmaceutical</u>, 133 F.R.D. 12, 13 (S.D.N.Y.1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment, . . . but will deny a stay of the civil proceeding where no indictment has issued"); <u>Citibank</u>, 1993 WL 481335, at *1 ("Although defendant Hakim allegedly is a target of a continuing grand jury investigation, he does not claim to have been indicted. Accordingly, Hakim's pre-indictment motion to stay can be denied on this ground alone.").

    At least two considerations, both pertaining to the competing interests and relative burdens on the parties, underlie this distinction between pre-indictment and post-indictment stays. First, "it is inherently unclear to the Court just how much the unindicted defendant really has to fear." <u>Maldanado</u>, 2018 WL 2561026, at *2 (quoting <u>Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.</u>, 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)). "As a result, the court considering the request cannot conclude with any degree of certainty that there is a significant burden on the defendant in proceeding in the civil case. Second, "the delay imposed on the plaintiff is

potentially indefinite." Id. (quoting Sterling Nat'l Bank, 175 F. Supp. 2d at 577)). "This is

because the court cannot know how complicated the government's investigation may be, whether

the allegations of the particular civil plaintiff are merely the tip of an iceberg that will result in a

lengthy and open-ended investigation, what priority the government assigns to the investigation,

whether it will result in charges that will have to be litigated, or how time-consuming the

resulting criminal case will be." Id.

But this distinction does not amount to a "hard-and-fast rule," see Savalle, 2001 WL

1571381, at *2, that categorically bars stays pre-indictment and mandates them post-indictment.

Rather, it is "at best, a guide to the exercise of discretion." Sterling Nat'l Bank, 175 F. Supp. 2d

at 576–77. For the Court has inherent discretion in determining whether to stay civil matters

pending before it until criminal proceedings against the defendant are resolved, and this exercise

of discretion must be based on an individualized assessment of each case. See Banks v.

Yokemick, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001) (noting that the decision whether to grant

a stay "demands a particularized inquiry into the circumstances of, and the competing interests

in, [each] case"). Courts can and do deny post-indictment stays and grant pre-indictment stays,

when warranted by particular circumstances. See, e.g., Paine, Webber, 486 F. Supp. at 1118–19

(denying a post-indictment stay of parallel civil proceedings); In re 650 Fifth Ave., No.

08-CV-10934, 2011 WL 3586169, at *4 (S.D.N.Y. Aug. 12, 2011) (noting that "[t]here is no

question that a court has discretion to stay a civil litigation even in favor of a pending

investigation that has not ripened into an indictment[.]") (quoting Sterling Nat'l Bank, 175

F.Supp.2d at 577). A pre-indictment stay may be warranted, for  instance, when "there is an

imminent likelihood that the defendant will be subject to a criminal proceeding, including a trial,

in the very near future." <u>Maldanado</u>, 2018 WL 2561026, at *2 (citing <u>In re 650 Fifth Avenue</u>, 2011 WL 3586169, at *3).

## IV.  DISCUSSION

Below, the Court assesses the propriety of a stay, considering the six factors recognized in <u>Louis Vuitton</u>, <u>see</u> 676 F.3d at 99. Plaintiff concedes and the Court agrees, with respect to the first factor, that "the issues in the criminal case" largely "overlap with those presented in the civil case." <u>Id.</u>; Greenstein Decl. ¶ 7.[4] The Court thus focuses its attention on the remaining factors. Because, as discussed, the significance of the "status of the case," <u>Louis Vuitton</u>, 676 F.3d at 99, is intertwined with considerations of the relative weight of the interests and burdens at stake, <u>id.</u>, the Court considers the second, third, and fourth factors together. The analysis of those factors is followed by a discussion of the interests of the public and of the Court.

### A.  Status of the Criminal Case, Competing Interests, and Relative Burdens

Both Plaintiff and Snyder focus on the pre-indictment/post-indictment distinction, with Snyder maintaining that this case is similar to other post-indictment cases and Plaintiff insisting that this case is more analogous to those involving a pre-indictment procedural posture. Snyder's Mem. of Law at 7–8; Pl.'s Mem. of Law at 5–7. But this case is unique, in that it is, all at once,

---

[4]  This factor does not appear to bear significant weight, at least where a private party brings the civil action at issue. <u>See, e.g.</u>, <u>Citibank</u>, 1993 WL 481335, at *2 ("Although the risk of prejudice to a civil defendant is heightened when the subject matter of the civil action parallels a pending criminal action, the potential for prejudice is diminished where, such as here, a private party, not the government, is the plaintiff in the civil action; it is less likely in such cases that the civil discovery process will be used as a cloak to conduct criminal discovery.") (internal citations omitted); <u>Maldanado</u>, 2018 WL 2561026, at *3 ("[T]his is not a case in which the government itself has an opportunity to escalate the pressure on defendants by manipulating simultaneous civil and criminal proceedings, both of which it controls."). For this reason, and because, as discussed below, all other factors weigh against Snyder, the Court does not place great significance on the overlapping subject matter of the civil and criminal cases.

post-indictment, post-dismissal of the indictment, and potentially pre-appeal. Neither party cites any case in this posture, apparently because there are not many. Because there is a dearth of cases of this type, and because the pre-indictment/post-indictment distinction plays a central role in the case law, see Maldanado, 2018 WL 2561026, at *2, the Court accepts the parties' invitation to determine whether this case is more analogous to those in the investigatory, pre-indictment stage, or to cases in which the defendant has been indicted and faces imminent or ongoing criminal proceedings. The Court finds that this case is more analogous to the former, and that, largely for that reason, a stay is unwarranted.

Snyder likens this case to other post-indictment cases, and points to particular facts that, as in a case in which a trial is imminent or ongoing, purportedly both make potential prejudice to Snyder likely and enable the Court to ascertain roughly how long a stay must be in effect. First, Snyder argues that, although the People have not yet appealed, they are likely to do so. Reply at 2. Snyder notes that "[f]ollowing  the [May 2020 Decision], a spokeswoman for the People asserted" in a statement quoted in a May 24 news article "that they were very disappointed with [the trial court's] decision and will appeal." Reply at 2–3 (internal quotation marks omitted). Despite the fact that the People made this statement nearly three months ago and still have not appealed, casting some doubt on their commitment to doing so, the Court will assume for the sake of argument that the People will appeal. Perhaps they are making preparations at this very moment.

But even if the People do appeal, there are several contingencies that both make it difficult for the Court to ascertain how long the requested stay would have to last to ensure that Snyder is protected from any risk of prejudice and raise doubts about the likelihood of that risk.

For instance, once the People appeal, it is difficult to predict when the Appellate Division will issue a decision. It is also unknown whether there will be an additional appeal to the New York Court of Appeals, and, if so, when the highest court will issue a decision. Moreover, given the serious constitutional issues that the state trial courts compellingly reasoned would be implicated by the continued prosecution of this case, it seems unlikely, albeit surely not impossible, that the People would ultimately prevail on appeal. Snyder faults Plaintiff for failing to provide legal analysis to support her assertion that the People's success on appeal is "highly uncertain." See Pl.'s Mem. of Law at 5–6; Reply at 2. But it is rather Snyder's burden to prove that success on appeal is likely, because he has the burden of demonstrating that the extraordinary remedy he seeks is necessary. See Louis Vuitton, 676 F.3d at 97. And Snyder has not attempted to demonstrate that the People are likely to prevail on appeal. Snyder further asserts, plausibly, that "[i]f the People succeed on either of their appeals, they will not be required to initiate new Grand Jury proceedings or further investigate the matter. Instead, the Indictment will be reinstated as a matter of law without further Order of the Court and trial will commence." Reply at 3. But this only eliminates uncertainty subsequent to all of the contingencies already mentioned.

The remote and speculative possibility that Snyder will be subject to prosecution makes this case analogous to those in a pre-indictment posture. For "it is inherently unclear to the Court just how much the unindicted defendant really has to fear," Maldanado, 2018 WL 2561026, at *2 (quoting Sterling Nat'l Bank, 175 F. Supp. 2d at 577), as it is uncertain, at best, that the People will be legally permitted to bring this case to trial. And it is difficult to guess "what priority the government assigns to the [appeal], whether it will result in . . . [further] litigat[ion], or how time-consuming the resulting criminal case will be," should the case ultimately proceed to trial.

Id. In pre-indictment cases, courts determine whether "there is an imminent likelihood that the defendant will be subject to a criminal proceeding, including a trial, in the very near future." Maldanado, 2018 WL 2561026, at *2. This would be an implausible characterization of Snyder's situation, even considering the particular oases of certainty Snyder highlights in forecasting the trajectory of the criminal case.

The Court is reassured in its conclusion that this case is better analogized to those involving pre-indictment stays after considering persuasive cases in other jurisdictions involving more closely analogous criminal procedural postures. In Pullen v. Howard, the court denied a stay when an indictment had been dismissed but the state had publicly expressed an intent to re-file charges. No. 14-CV-104, 2015 WL 145091, at *3 (S.D. Ohio Jan. 12, 2015). The Court found that the factor of "the stage of the criminal proceeding" weighed against a stay, noting that the prosecutor, similarly to the People in this case, had not yet re-filed charges two months after it announced its intention to do so and about eighteen months after the alleged criminal conduct occurred. Id. at *2. And in SEC v. Exotics, the court granted the plaintiff's motion to lift a stay of civil proceedings when the parallel criminal action had been dismissed due to a mistrial, and the dismissal had been upheld on appeal to the Ninth Circuit. No. 05-CV-531, 2008 U.S. Dist. LEXIS 139364, at *10, 14–15 (D. Nev. May 19, 2008). The court found that the possibility of a reversal via an en banc re-hearing of the appeal or upon appeal to the Supreme Court was too speculative, as "such reversal will not occur for many months, if not years," and "although this Court cannot predict whether the Government will seek reversal of Ninth Circuit decision, the Court has not been provided with any basis for concluding that reinstatement of the indictment is likely to occur." Id. at *10. This case is analogous, in that a possible future criminal trial would

occur many months from now, and in that Snyder has not provided any basis, nor is there any

obvious basis, for believing that the People would be successful on appeal.

Plaintiff, for her part, points to present and certain, if largely general and commonplace,

burdens that she would suffer if the Court issued a stay. Plaintiff argues that she "will needlessly

suffer extensive delay in vindicating her rights and will be prejudiced by the delay in obtaining

discovery from witnesses, including all the named defendants, whose memories will undoubted

fade with the lengthy passage of time." Pl.'s Mem. of Law at 8.

Snyder argues that Plaintiff does not present particularized concerns regarding the

preservation of evidence. See Snyder's Mem. of Law at 7 (noting that "[n]one of the alleged

sexual assaults were captured on any of the many cameras present," "[n]o physical evidence was

collected for Patrick," "any material that could be deemed evidence is being preserved by the

people," and "the People have not disclosed, and Defense counsel is unaware, of any

eyewitnesses to the alleged sexual assault") (citing DerOhannesian Decl. ¶¶ 12–13). By Snyder's

account, in other words, Plaintiff presents nothing more than the generalized concern that delay

in proceeding to discovery will postpone the vindication of her rights. This, according to Snyder,

is not enough to defeat a stay.

There is some truth to this characterization of the potential prejudice Plaintiff faces. But

even Plaintiff's general and commonplace interest in expeditiously advancing her claims is

sufficient to defeat a stay since Snyder has not met his burden to establish any likely or imminent

prejudice to his ability to defend this case. Snyder himself has raised nothing more than a

generalized concern, present in every instance of parallel civil and criminal proceedings, "that he

will be forced to choose between testifying or asserting his Fifth Amendment privilege, and, in

turn, either risking self-incrimination or adverse inferences and a diminished ability to defend against the civil claims asserted against him." See Citibank, 1993 WL 481335, at *2. But this concern, in the abstract, absent any evidence of unique or unusual burdens on the defendant, "will not alone justify a stay of civil discovery." See id.; see also Transatlantic Reinsurance Co.,1991 WL 12135, at *2 ("[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim."); Paine, Webber, 486 F. Supp. at 1119 ("That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim.").

Moreover, there are some particularized concerns here related to the preservation of evidence. Plaintiff may not be able to point to a need to preserve video evidence or capture eyewitness's memories before they fade. But there is also, as Plaintiff mentioned, a concern that the memories of the parties themselves will fade if depositions do not begin until several months from now, or longer, a worry made yet more plausible by the fact that eighteen months have already passed since the relevant alleged conduct occurred. See generally Indictment.

Accordingly, the second, third, and fourth factors weigh against a stay. Like a pre-indictment stay, a post-dismissal-of-indictment stay in this case would protect the defendant from a relatively remote and conjectural burden, at the expense of imposing real and immediate burdens on the Plaintiff's interest in expeditiously advancing her claims.

**B. The Interests of the Public and the Court**

Both this civil action and the parallel criminal case implicate important public concerns pertaining to the conditions of confinement prevailing in New York prisons. The public has an

interest not just in holding prison officials accountable when they violate the law, but also, more fundamentally, an interest in access to information about official misconduct and the state of carceral institutions. But because the People have so far not prosecuted the criminal case in a competent manner, this civil action is likely the most efficient, and may even prove to be the only avenue for the public to uncover the truth of what occurred between the parties and facilitate a just resolution of their dispute. Similarly to the context of civil suits under the Racketeer Influenced and Corrupt Organizations Act, a stay in this case disserves the public interest, because private enforcement of Plaintiff's rights "supplement[s] the government's limited resources for pursuing criminal activity." Sterling Nat. Bank, 175 F. Supp. 2d at 580; see also Briscoe v. Lahue, 460 U.S. 325, 337 (1983) (noting that in passing the The Ku Klux Klan Act of 1871, which codified the current 42 U.S.C. § 1983, Congress created a private right of action to remedy constitutional violations out of concern that due to "the breakdown of law and order in the Southern States," perpetrators of racial violence escaped state criminal prosecution).

More generally, our legal system depends centrally on the role of private attorneys general in remedying legal violations when the government is unable or unwilling to do so. See, e.g., Hanna L. Buxbaum, *The Private Attorney General in a Global Age: Public Interests in Private International Antitrust Litigation*, 26 Yale J. Int'l L. 219, 222–223 (2001) (noting that "[e]fforts of governmental agencies to enforce regulatory statutes are enhanced in many areas of law, including environmental law and securities regulation, by . . . private litigation."); Christopher W. Robbins, *Finding Terrorists' Intent: Aligning Civil Antiterrorism Law with National Security*, 83 St. John's L. Rev. 1201, 1253 (2009) (noting that "[c]ivil litigation has proved to be a tool against the growth of violent hate groups within the U.S. as a supplement to criminal

15

action"); <u>Chance v. Board of Examiners</u>, No. 70-CV-4141, 1975 U.S. Dist. LEXIS 13001, at *5 (S.D.N.Y. Apr. 4, 1975) (noting in awarding attorneys' fees in an anti-discrimination § 1983 action against state officials and agencies that "[t]he plaintiffs as private attorneys general have performed a public function of great importance for which they should be compensated."). This case exemplifies the value of this system.

Moreover, the Court has an interest in the orderly and efficient management of its docket that would be ill-served by the stay Snyder requests. Granting this stay would entail putting this case on hold for an indeterminate period of time. The Court prefers to set firm dates for the upcoming procedural steps in this case. <u>Citibank</u>, 1993 WL 481335, at *2 (noting that "it is unrealistic to postpone indefinitely the pending action until criminal charges are brought," because "[s]uch a postponement would require this court . . . to rely upon fortuitous events to manage its docket").

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Snyder's motion for a stay (Dkt. No. 17) is **DENIED without prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        August 19, 2020
              Albany, New York

Lawrence E. Kahn
U.S. District Judge

16